United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JAMES F. GOODFELLOW,

                 Plaintiff,

   v.

GREGORY J. AHREN, et al.,

                 Defendants.

_____/

No. 13-04726 RS

**ORDER ON DEFENDANTS'
MOTIONS**

I.  INTRODUCTION

*Pro se* plaintiff James Goodfellow claims to have suffered significant injury and abuse at the hands of various law enforcement officers for the City of Oakland and County of Alameda.  He asserts numerous claims for relief against defendants Gregory James Ahern (in his official capacity as Sheriff of Alameda County), Alameda sheriff's deputy Ian Williams, the Alameda County Sherriff's Department, Alameda County, the Oakland Police Department, the city of Oakland, and numerous Doe defendants.[1]  Three motions are currently pending: (1) a motion to dismiss filed by the City of Oakland, (2) a motion for judgment on the pleadings filed jointly by defendants Ahern, Willis, Alameda County, and the Alameda County Sheriff's Department ("ASCO defendants"), and (3) a motion to stay discovery lodged by the ASCO defendants.  For the following reasons, defendants' Rule 12 motions are each granted in part and denied in part.  The ASCO defendants' motion to stay discovery is denied, but Goodfellow must cease communicating with represented

_____

[1] Ahern was sued erroneously as "Ahren."

parties.  Pursuant to Civil Local Rule 7-1(b), these motions are suitable for disposition without oral argument.

## II. BACKGROUND[2]

### A.  The Arrest

Goodfellow's allegations stem from a series of events set in motion the evening of January 18, 2013.  That night, he received a phone call from an acquaintance named Mosleh Hugais.  Hugais, owner of the Penn Manor apartment complex in Oakland, told Goodfellow about a recent phone call from "the police" concerning a law enforcement plan to gain entry into a particular Penn Manor apartment unit that same evening.  "The police" apparently told Hugais that if he were willing to meet law enforcement officers to unlock the unit in question so that they could search for a suspect, the officers could avoid making a forced entry.  Hugais, who speaks a first language other than English, called Goodfellow, a former member of the California bar, to seek his advice on whether to accede to the law enforcement request.

Goodfellow agreed to accompany Hugais to the scene.  The pair, traveling in Hugais' car, soon arrived at Penn Manor to find numerous law enforcement officers in the parking lot.  Upon seeing that many of those officers were equipped with rifles and vests, Goodfellow came to believe that the situation was "uniquely serious."  (Compl. ¶ 14).  While Hugais entered the Penn Manor office to retrieve the key to Apartment 8, the unit in question, Goodfellow approached a deputy "wearing a sergeant insignia" to find out more.  *Id.*  Goodfellow asked the officer ("Doe #1") if he was in charge, to which the apparent sergeant "responded with vulgar speech concerning [plaintiff's] presence there."  (Compl. ¶ 15).  Goodfellow explained that he was an "assistant" to the owner and manager of Penn Manor and that he had accompanied Hugais upon request.  *Id.*  He then asked if the "person of interest" was inside Apartment 8 and explained "that in general law enforcement will not break down doors unless they know that their person of interest is within."  *Id.*  The sergeant mocked Goodfellow with additional "vulgar" speech and refused to answer his question.  *Id.*  Goodfellow then turned to another officer, apparently a deputy sheriff, and asked the

---

[2] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss.

1  same question.  The second officer stated that the person of interest was not at home in the

2  apartment.[3]  Goodfellow turned back toward the sergeant and said, "at least someone here has

3  enough intelligence to answer a reasonable question."  *Id.*

4      Then, according to Goodfellow, things took a turn for the worse.  The "sergeant" grabbed

5  Goodfellow, turned him around, and handcuffed him "tightly enough to cause immediate and

6  substantial pain."  (Compl ¶. 16).  The officer then placed his hands on Goodfellow's genitals,

7  buttocks, and "all over his person," after which he threatened Goodfellow with "further bodily

8  injury."  *Id.*  Another "deputy sheriff," who Goodfellow describes as being particularly tall, forcibly

9  moved Goodfellow from the parking lot into the street.  The deputy handled him in a manner

10  Goodfellow avers was "devised to cause great pain" and was "for the purpose of rendering Plaintiff

11  completely submissive, *i.e.* torture."  (Compl. ¶ 19).  Goodfellow protested that there was no need

12  to be treated so aggressively, as he was not resisting arrest.  The officer replied, "I know," but

13  continued the alleged abuse.  *Id.*  He cuffed Goodfellow's hands behind his back with such force

14  that Goodfellow "thought that his left wrist was breaking."  *Id.*  Goodfellow begged the officer to

15  stop and intentionally fell to the ground in an attempt to protect himself.  The deputy forcibly pulled

16  him up, whereupon Goodfellow "screamed in pain."  *Id.*  The officer "mocked, threatened and

17  continued to torture Plaintiff by intentionally inflicting pain," despite Goodfellow's lack of

18  resistance.  *Id.*

19      Goodfellow further avers that while he was being "assaulted" and "tortured" by the tall

20  deputy sheriff, he was subjected to name-calling and ridicule by several other deputies "who

21  gathered around and watched and thereby ratified the assault and torture."  (Compl. ¶ 20).  The

22  officer repeatedly called Goodfellow a "drama queen," a phrase Goodfellow believes was rooted in

23  the officer's "perception/misperception" regarding his sexual orientation.  *Id.*

24      An Oakland police officer arrived on the scene to administer a blood alcohol test.  Upon

25  administering the test, the officer remarked that the result was "too low" and then "tried to trick

26

27  [3] Goodfellow later learned that the officers had already entered Apartment 8 before his arrival.
    Accordingly, he avers they had concluded "any law enforcement business that they may have had"
28  before his arrival and subsequent arrest.  (Compl. ¶ 17).

United States District Court
For the Northern District of California

1    Plaintiff into breathing into the apparatus again in an apparent effort to skew the test result."

2    (Compl. ¶ 22).  While Goodfellow was being detained, another Oakland officer approached and

3    "expressed regret" about Goodfellow's treatment "but stated that he lacked the rank to do anything

4    about it."  (Compl. ¶ 21).

5        B.  The Detention

6        Goodfellow recounts that he was then placed in a police van and driven around "for about an

7    hour more," during which time he "wept with pain" and begged to have his handcuffs, which he

8    alleges were excruciatingly tight, loosened.  (Compl. ¶ 23).  The officers driving the van laughed

9    and denied his requests.  The van stopped at an unknown facility where arrestees are interviewed for

10   intake purposes.  Goodfellow was examined by a nurse, who asked if Goodfellow had any medical

11   conditions or current prescriptions.  Goodfellow, who has HIV/AIDS, was reluctant to disclose his

12   condition within earshot of other arrestees.  He did so, however, out of concern that he might

13   otherwise miss his medications.  The nurse told him that no medications could be dispensed until the

14   underlying prescription was verified by his doctor.  Because he was arrested on the Friday night of a

15   three-day weekend, Goodfellow was told his medications would not be available for days.  He also

16   attempted to tell the nurse about the extreme pain in his wrists and arms, but she was dismissive of

17   his grievances.

18       Goodfellow was then transported to Santa Rita jail, where he was detained for more than

19   twenty-four hours.  Upon arriving, he was placed in a holding area so crowded that he was unable to

20   sit down or use the toilet.  He avers the authorities in charge of Santa Rita deliberately keep

21   inaccurate intake records and avoid using surveillance cameras in an attempt to "obfustace systemic

22   and routine overcrowding."  (Compl. ¶ 27).  During his stay, he was repeatedly moved from cell to

23   cell, none of which had "any bed or chair in which he could rest."  (Compl. ¶ 28).  In one such cell,

24   Goodfellow observed one deputy sheriff engage in racial harassment of a "young Hispanic

25   prisoner."  *Id.*  The officer's behavior offended and upset Goodfellow.  *Id.*  At one point on Sunday,

26   January 20th, Goodfellow was taken into the hallway by a deputy sheriff and was "compelled" again

27   to disclose his HIV/AIDS status in the presence of other prisoners, thereby causing Goodfellow

28   significant additional stress.  (Compl. ¶ 29).  He was not provided with any medication during his

incarceration, causing him to miss several doses of his HIV/AIDS treatment.

Goodfellow was charged with two crimes: obstruction of justice and "drunk and disorderly conduct." (Compl. ¶ 30). He alleges that his bail, which was set at $10,000, was satisfied in full the morning of Saturday, January 19th. He was not released, however, until sometime after 11:00 p.m. on Sunday the 20th. *Id.* Upon his release, prison officials would not allow him to make a phone call, so Goodfellow had to walk a mile to the nearest Bay Area Rapid Transit station "in cold weather with inadequate clothing and footwear." *Id.* After arriving home, Goodfellow "remained agitated and was unable to sleep for another day." (Compl. ¶ 33). He becamse so "upset," "distressed," and "humiliated" by defendants' actions that "he experienced trauma and emotional and mental distress which continues." *Id.*

C. Grievance and Investigation

A month after his arrest and release, Goodfellow learned that the Alameda County district attorney was dropping all charges against him. On February 25, 2013, he sent a written complaint to the Alameda Sheriff's Department detailing the mistreatment he suffered during his arrest and incarceration. He also provided notice of his claims and warned of his intent to file a civil lawsuit. Months later, he was contacted by defendant deputy Ian Willis, who arranged an interview. Willis, accompanied by another unknown deputy, recorded an interview with Goodfellow. Although the conversation was ostensibly for the purpose of investigating Goodfellow's complaint, he alleges that "[i]n reality, WILLIS's questions were not investigatory in nature at all but sought to exonerate his colleagues[.]" (Compl. ¶ 36). He further avers that Willis "repeatedly refused information offered by Plaintiff regarding the injuries to his left wrist," and that he failed to interview any Penn Manor residents who were present during Goodfellow's arrest. *Id.* He also contends that Willis would not have interviewed Mosleh Hugais, the Penn Manor landlord, "had Plaintiff not memorizalized by e-mail WILLIS's repeated failure to return Mr. Hugais's phone calls and Plaintiff's intention to point out this failure to WILLIS's superiors." *Id.* Finally, he claims Willis has refused to provide him with a copy of his recorded statement, an act Goodfellow alleges "is contrary to California law" and was undertaken pursuant to "the official policy" of the Alameda County Sherrif's Department. *Id.* At the time of the filing of the complaint, the Department had failed "to render any decision"

concerning the merits of Goodfellow's grievance.  *Id.*

**D.  Goodfellow's Complaint**

Goodfellow filed this action on October 10, 2013.  His complaint alleges ten claims for relief:

1.  deprivation of civil rights under 42 U.S.C. § 1983 (against all defendants),

2.  battery (against Does #1-50),

3.  sexual battery under Cal. Civ. Code § 1708.5 (against Doe #1),

4.  discrimination in violation of the Unruh Act (against Ahern, Willis, "Sheriffs," and Does #1-50),

5.  false imprisonment (against Ahern, "Sheriffs," and Does #1-50),

6.  intentional infliction of emotional distress (against Willis and Does #1-50),

7.  negligent infliction of emotional distress (against all defendants),

8.  negligence (against Ahern, Willis, "Sheriffs," and County),

9.  slander *per se* in violation of Cal. Civ. Code §§ 44, 45 (against Does #1-50),

10. declaratory relief "for practices violating the fourth and sixth amendments and California Penal Code § 832.7(b)" (against the County, "Sheriffs," and Ahern).

(Compl. ¶¶ 38-76).

### III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*. at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure

United States District Court

For the Northern District of California

1    tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v.*

2    *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on

3    either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a

4    cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

5    When evaluating such a motion, the court must accept all material allegations in the complaint as

6    true, even if doubtful, and construe them in the light most favorable to the non-moving party.

7    *Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted inferences," however,

8    "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy*

9    *Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of

10   the elements of the claim for relief, supported by mere conclusory statements," are not taken as

11   true).

12        A motion for judgment on the pleadings under FRCP 12(c) is a "means to challenge the

13   sufficiency of the complaint after an answer has been filed." *New.Net, Inc. v. Lavasoft*, 356 F. Supp.

14   2d 1090, 1115 (C.D. Cal. 2004).  It is "functionally identical" to a Rule 12(b) motion to dismiss for

15   failure to state a claim, differing only in that it is filed after pleadings are closed. *See Dworkin v.*

16   *Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); Fed. R. Civ. P. 12(c).  In evaluating a

17   motion for judgment on the pleadings, all material allegations in the complaint are accepted as true

18   and construed in the light most favorable to the non-moving party. *See Turner v. Cook*, 362 F.3d

19   1219, 1225 (9th Cir. 2004) (citation omitted).

20                                  IV. DISCUSSION

21        A.  Threshold Issues

22            i.    *Doe Defendants*

23        Many of Goodfellow's allegations focus on the actions of numerous Doe defendants whose

24   identities are unknown.  As it remains unclear who employed the various Doe officers alleged to

25   have injured Goodfellow and violated his rights, neither the City nor the ASCO defendants

26   undertake to defend these unknown officers' actions.  Goodfellow avers that most of the bystanders

27   were sheriff's deputies, but the ASCO defendants' motion seeks only to dispose of the claims

28

against Willis, Ahern, and the County itself.  Once Goodfellow learns the identities of the Doe

defendants through discovery, he must amend his complaint to reflect their actual identities.

> ### ii.   Improperly-Named Defendants

Goodfellow's first claim for relief proceeds under 42 U.S.C. § 1983 against "all defendants,"

including the Oakland Police Department ("OPD") and Alameda County Sheriff's Department.

Although municipalities, such as cities and counties, may properly be sued for civil rights violations

under § 1983, sub-departments or bureaus of municipalities, such as police departments, are not

generally considered "persons" within the meaning of the statute.  *Hervey v. Estes*, 65 F.3d 784, 791

(9th Cir. 1995); *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

Accordingly, Goodfellow's first claim for relief against the OPD and Alameda County Sheriff's

Department is dismissed.  Similarly, any claims naming "Sheriffs" as a defendant will be construed

as intending to state a claim against the County of Alameda.

> ### iii.   Materials Beyond the Complaint

"As a general rule, a district court may not consider any material beyond the pleadings in

ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

(citation and quotation marks omitted).  A court is, however, entitled to consider (1) documents

incorporated into the complaint by reference and (2) matters subject to judicial notice.  *Tellabs, Inc.*

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In opposition to the ASCO defendants'

motion for judgment on the pleadings, Goodfellow submits a declaration accompanied by six

extrinsic documents, including a police report, an Associated Press article, and various pieces of

correspondence between the parties.  These documents are not incorporated into the complaint by

reference, nor are they subject to judicial notice pursuant to Rule 201 of the Federal Rules of

Evidence.[4]  Although Goodfellow invokes *Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998),

wherein the Ninth Circuit held that a district court ruling on a motion to dismiss "may consider a

---

[4]Although Goodfellow does not formally request judicial notice, such notice would be inappropriate
here, where he seeks to admit numerous documents in their entirety without explaining which facts
therein are noticeable under Rule 201.  Judicial notice may be invoked only in very limited
circumstances and for limited purposes.  *See, e.g., Pinterest Inc. v. Pintrips Inc.*, 13-4608 RS, 2014
WL 598625 (N.D. Cal. Feb. 14, 2014) (publicly-available government documents were noticeable
only for the limited purpose of showing that they were filed on particular dates).

document the authenticity of which is not contested, and upon which the plaintiff's complaint *necessarily relies*," he does not explain why the six attached documents meet these criteria. *Id.* 706 (emphasis added). Accordingly, for purposes of resolving defendants' Rule 12 motions, which test the sufficiency of the complaint itself, Goodfellow's extrinsic evidence will not be considered.

B. City of Oakland's Motion to Dismiss

The City of Oakland moves to dismiss Goodfellow's two claims against it: the first (for deprivation of civil rights under § 1983) and seventh (for negligent infliction of emotional distress).

i.   Timeliness

As an initial matter, the parties dispute the timeliness of one another's filings. The City's motion, which was originally filed December 3, 2013, was re-noticed after this action was reassigned. (ECF No. 22). While the docket entry stated that a hearing would be held on one date, the City's filing listed a different date. To clear up any confusion, the City re-noticed the hearing a second time. (ECF No. 23). Goodfellow contends the City's motion to dismiss should be stricken in its entirety due to these "procedural mishaps." (Pl's Opposition, ECF No. 24, 3:6). The City, in turn, faults Goodfellow for lodging his opposition on January 22, 2014—a date that, under any method of calculation, is far later than is permitted by the local rules. *See* Civil L. R. 7-3(a).[5]

As there is no indication that either party has been prejudiced by the timing of their opponent's filings, no pleadings will be stricken for purposes of resolving this motion. Moving forward, however, the parties are advised that all filings must strictly comply with the Federal Rules of Civil Procedure and the Civil Local Rules of this district.[6]

ii.   Municipal Liability Under § 1983

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

---

[5] Similarly, Goodfellow lodged an untimely opposition to the ASCO defendants' motion for judgment on the pleadings. His response, which was due on February 21, 2014, was not filed until February 25, 2014.

[6] Although *pro se* litigants are held to a lesser pleading standard than are other parties, *see Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008), the Local Rules provide that "[a] person representing him or herself without an attorney is bound by the Federal Rules, as well as by all applicable local rules. Sanctions (including default or dismissal) may be imposed for failure to comply with local rules." Civil L.R. 3–9(a).

United States District Court
For the Northern District of California

1    violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S.

2    42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).  The City contends

3    that Goodfellow's pleadings fail to support either element.

4         Goodfellow's first claim contains two allegations of unconstitutional conduct against the

5    City: (1) that an OPD officer failed to intervene when other officers were abusing Goodfellow, and

6    (2) that another OPD officer attempted to skew the blood alcohol test to justify Goodfellow's arrest.

7    Looking at the first allegation, Goodfellow has made a plausible showing that his constitutional

8    rights were violated.  *See United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) *aff'd in*

9    *part, rev'd in part on other grounds*, 518 U.S. 81 (1996) ("Thus an officer who failed to intercede

10   when his colleagues were depriving a victim of his Fourth Amendment right to be free from

11   unreasonable force in the course of an arrest would, like his colleagues, be responsible for

12   subjecting the victim to a deprivation of his Fourth Amendment rights.").  Accordingly, the

13   complaint satisfies the first "essential element" of his § 1983 claim.  *See Atkins*, 487 U.S. at 49.

14        The second element requires that the allegedly unconstitutional conduct was committed by a

15   person acting under the color of state law.  *Id.*  While a "person" for purposes of § 1983 includes

16   municipalities, such entities cannot be held accountable for their employees' acts under a respondeat

17   superior theory.  *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690 (1978).  To state a claim for

18   municipal liability under § 1983, a plaintiff "must allege that the action inflicting injury flowed from

19   either an explicitly adopted or a tacitly authorized city policy."  *Gibson v. U.S.*, 781 F.2d 1334, 1337

20   (9th Cir. 1986).  In other words, municipal liability may be based upon (1) an express policy

21   statement, ordinance, or regulation, (2) actions by officials with "final policymaking authority," or

22   (3) "a widespread practice that, although not authorized by written law or express municipal policy,

23   is 'so permanent and well settled as to constitute a custom or usage with the force of law.'"  *City of*

24   *St. Louis v. Praprotnik*, 485 U.S. 112, 123-127 (1988) (internal citations omitted).  Goodfellow

25   avails himself of the third theory, averring the City "created policies, practices and/or a

26   climate/culture that proximately caused Plaintiff's injuries."  (Compl. ¶ 41).  While the City

27   correctly contends that these particular allegations are conclusory, other averments in the complaint

28   support Goodfellow's claim that the City fostered a culture in which officers erroneously believe

they must acquiesce to their superiors' abuse of citizens.  According to Goodfellow, an unnamed OPD officer made comments indicating that while he regretted the other officers' conduct, his rank left him unable to intercede on Goodfellow's behalf.  (Compl. ¶ 21).  This statement, if accurate, might bear on the existence of a policy sufficient to sustain Goodfellow's *Monell* claim against the City.  While it is far from apparent that any such policy was the actual "moving force" behind any alleged constitutional violations, *see Monell,* 436 U.S. at 694, for purposes of surviving a motion to dismiss, the complaint alleges a plausible basis for municipal liability under § 1983.[7]  Accordingly, the City's motion to dismiss the first claim is denied.

> iii.  *Negligent Infliction of Emotional Distress*

The City contends, and Goodfellow agrees, that the complaint fails to state a claim for negligent infliction of emotional distress.  In particular, the complaint fails to allege that Goodfellow complied with the California Government Claims Act, which provides that "no suit for 'money or damages' may be brought against a public entity until a written claim has been presented to the entity and the claim either has been acted upon or is deemed to have been rejected."  *Canova v. Trustees of Imperial Irr. Dist. Employee Pension Plan*, 150 Cal. App. 4th 1487, 1493 (2007) (citing Cal. Gov't Code §§ 905, 945.4).  Accordingly, the seventh claim for relief against the City is dismissed with leave to amend.

> C.  ASCO Defendants' Motion for Judgment on the Pleadings

> i.  *§ 1983*

For Goodfellow's first claim to survive defendants' motion unscathed, his complaint must allege facts plausibly supporting § 1983 liability against each ASCO defendant: Deputy Willis, Sheriff Ahern, and Alameda County.

---

[7] Because the allegations regarding the OPD officer's failure to intervene are sufficient to support Goodfellow's first claim, this order need not decide whether the other officer's attempt to "skew" the blood alcohol test is actionable.  That theory seems less viable, however.  While Goodfellow contends this conduct violated his Fourth and Sixth Amendment rights, he does not explain how those constitutional interests are implicated by an officer's failed attempt to falsify evidence.  Moreover, even assuming the officer's actions were unconstitutional, no facts in the complaint support Goodfellow's contention that they were undertaken pursuant to an official City policy.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

a.  Individual Liability: Deputy Willis

Goodfellow alleges that Willis' "sham" investigation amounted to a deprivation of his civil rights.  While the complaint does not allege which specific rights were violated by Willis, his opposition argues that Willis' insufficient investigation amounted to a violation of his constitutional right to due process.[8]  An inadequate investigation alone does not "involve[] the deprivation of a protected right," but must implicate "another recognized constitutional right."  *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam).  Absent allegations that Willis' actions or omissions implicated a constitutionally-protected right beyond Goodfellow's right to due process, this claim fails.[9]  *See also Hason v. Beck*, 2013 WL 6732672 (C.D. Cal. Dec. 19, 2013) (collecting cases).

b.  Supervisory Liability: Sheriff Ahern

A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although Goodfellow's complaint does not aver a specific and identifiable basis for supervisory liability, his response contends that Ahern "had notice regarding the torture, failed to discipline the offenders or take any action at all concerning the criminal conduct of his subordinates, and therein acted with 'deliberate indifference' or even intentionally."  (ECF No. 38, 8:16-18)  For a supervisor to be liable for a subordinate's use of excessive force, the plaintiff must show that the supervisor  "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury."  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (citations and internal quotations omitted).  Unlike in *Blankenhorn*, on which Goodfellow relies, the allegations here focus on the

---

[8] Goodfellow contends that Willis violated his due process rights under the "Sixth and Fourteenth Amendments."  (Pl. Opp., ECF No. 38, 9:14).  While the Fourteenth Amendment offers due process protections, the Sixth Amendment does not.  Goodfellow's reliance on the Sixth Amendment is therefore misplaced.

[9] Goodfellow also contends that the ASCO defendants failed to comply with their obligations under Cal. Penal Code § 832.7 to produce Goodfellow's recorded statement.  Section 1983 does not operate to vindicate state law rights.  It merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979).

United States District Court

For the Northern District of California

1  sheriff's actions and omissions *following* the alleged abuse at the hands of his deputies.  By contrast,

2  in *Blackhorn*, the court focused on the police chief's failure preemptively to control the behavior of

3  a subordinate officer whose conduct had prompted three prior claims of excessive force.  *Id.*  In

4  other words, there are no factual allegations supporting the theory that Ahern *caused* Goodfellow's

5  injuries.  *See id.*  Absent such averments, there is no basis for supervisory liability.

6       Similarly, there are no allegations that plausibly support Goodfellow's claim for supervisory

7  liability due to the conditions at Santa Rita.  Assuming such conditions were unconstitutional, there

8  are no factual averments that Ahern actually participated in, directed, or knew of (and failed to

9  prevent) these violations.  *See List*, 880 F.2d at 1045.  In *Townsend v. Allen*, on which Goodfellow

10  relies, the defendant was a correctional officer who worked at the prison and was directly

11  responsible for the deprivation of the plaintiff's civil rights.[10]  Here, by contrast, Goodfellow merely

12  alleges that Ahern must be responsible due to his role as sheriff.  This, without more, is insufficient

13  to raise Goodfellow's right to relief "above the speculative level."  *See Twombly*, 550 U.S. at 555.

14       Finally, while Ahern's alleged ratification of Willis' investigation might support the

15  existence of some "policy" for purposes of municipal liability, *see Larez v. City of Los Angeles*, 946

16  F.2d 630, 647 (9th Cir. 1991) (jury could properly find policy or custom from police chief's failure

17  to take any remedial steps after the alleged use of excessive force), these averments do not suffice to

18  sustain a claim for supervisory liability against Ahern himself.  Because Goodfellow fails to state a

19  plausible claim for supervisory or individual liability under § 1983 against Ahern, his first claim is

20  dismissed with respect to this defendant.

21       c.   Municipal Liability: County of Alameda

22       As discussed above, municipal liability under § 1983 requires that the municipality itself

23  caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694-95.  The County asserts that

24  Goodfellow's averments are too conclusory to state a viable claim for municipal liability.  The

25  complaint, however, avers dozens of unidentified deputies may have witnessed and/or encouraged

---

26  [10] Goodfellow fails to provide citations to numerous cases on which he relies.  While the court was
27  able to locate *Townsend v. Allen*, it was unable to find *Gremming v. Miller-Stout*.  Simiarly, it is
    unclear to which of the numerous *Graves v. Arpaio* orders Goodfellow refers.  Moving forward, no
28  consideration will be accorded any authorities not supported by a citation.

Goodfellow's abuse.  Assuming this to be true, Goodfellow alleges more than just a "single incident" of potentially unconstitutional conduct by a single officer.  *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("single incident" by one non-policymaking employee insufficient to establish a policy).  Moreover, the complaint alleges that the department's post-incident investigation was a mere sham orchestrated to shield its officers from liability.  While these averments do not suffice to sustain a claim of individual liability against Willis, they bolster Goodfellow's theory alleging the existence of a policy encouraging and ratifying the use of excessive force by ASCO deputies.  *See Larez*, 946 F. 2d at 647.  Additionally, Goodfellow avers that the conditions at Santa Rita jail, a facility allegedly maintained by the County, violated his Eighth Amendment right to be free from cruel and unusual punishment.  He further contends that, in violation of his constitutional right to privacy, he was forced to disclose his HIV/AIDS status in the presence of other inmates.  While it is far from apparent that either of these jail-related allegations could support a claim for § 1983 liability against the County, the ASCO defendants fail to explain why relief is necessarily foreclosed under either theory.  Construing the pleadings in a light most favorable to Goodfellow, the allegations plausibly support one or more theories of municipal liability.  Accordingly, the motion is denied with respect to Goodfellow's first claim against the County.

d.  Qualified Immunity

Both Ahern and Willis claim an entitlement to qualified immunity.  Because the complaint fails to state a claim for individual liability against either officer, this order need not address the ASCO defendants' qualified immunity arguments.

ii.   *Unruh Act*

Goodfellow's fourth claim proceeds under California's Unruh Civil Rights Act, which prohibits discrimination "of any kind against any person in any business establishment."  *Reyes v. Atl. Richfield Co.*, 12 F.3d 1464, 1471 (9th Cir. 1993); Cal. Civ. Code § 51.  Goodfellow contends that each of the ASCO defendants discriminated against him.  In particular, his complaint sets out the following allegedly discriminatory conduct: (1) the County's denial of his medications as a matter of policy or practice during his detention, (2) the County's "ratification" of Ahern's denial of

No. CV 13-04726 RS
ORDER

14

his medications, and (3) Willis' "ratification" of the Doe officers' discriminatory acts based on "a perception or misperception" of Goodfellow's sexual orientation.[11]  (Compl. ¶ ¶ 54-58).

As an initial matter, Ahern and Willis are individuals, not business establishments, so they cannot be sued under the Unruh Act.  What is less clear, however, is the extent to which governmental entities may be held liable under the statute.  *See Harper v. Lugbauer*, C 11-01306 JW, 2012 WL 1029996 (N.D. Cal. Mar. 15, 2012) (collecting cases); *Anderson v. Cnty. of Siskiyou*, C 10-01428 SBA, 2010 WL 3619821 (N.D. Cal. Sept. 13, 2010) (county jail is not a "business or establishment" under the Act).  Even assuming the County can be sued under the statute, Goodfellow nonetheless fails to state a claim for Unruh Act liability.  First, the complaint does not allege facts supporting Goodfellow's claim that he was denied his medications *because* of his HIV/AIDS status.  If anything, his averments indicate the delay was caused by the jail's apparently uniform policy of verifying prescriptions with a physician before dispensing medication.  (Compl. ¶ 25).  Second, even assuming Willis "ratified" the Doe officers' discriminatory acts by conducting an inadequate investigation, these averments are too thin and attenuated to support the notion that the County, by employing Willis, who investigated the arrest, is thus responsible for the Doe officers' allegedly discriminatory acts.  Accordingly, this claim is dismissed with leave to amend as to the ASCO defendants.

### iii.    Declaratory Relief

Goodfellow's tenth claim seeks "declaratory and/or injunctive" relief to prevent the ASCO defendants from carrying out allegedly unconstitutional practices like (i) denying HIV/AIDS medication to Santa Rita detainees for up to four days following their incarceration, (ii) permitting "unconscionable" levels of overcrowding and undertaking deliberate efforts to conceal such conditions, (iii) releasing prisoners who have made bail "in a manner and timeliness that is arbitrary and capcricious and with total disregard to the well-being and liberty of citizens," and (iv) deliberately withholding recorded statements of citizen complainants in violation of the California Penal Code.  (Compl. ¶ 76).  This claim, as pleaded, is not justiciable in federal court.  "[A] plaintiff

---

[11] While the fourth claim alleges numerous bases for relief, these are the only averments that apply to the named ASCO defendants.

must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000). While Goodfellow has standing to seek damages for past harm, there is no indication that injunctive or declaratory relief would likely redress his alleged injuries. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, he lacks standing to sue on behalf of third parties who are allegedly being subjected to the same conduct. Accordingly, his tenth claim is dismissed with leave to amend.

### iv. Other State Law Claims

The ASCO defendants also move to dismiss Goodfellow's claims for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. Goodfellow makes no attempt to argue that these claims should not be dismissed. Because it is entirely within the court's discretion to treat unopposed arguments as being conceded, Goodfellow's fifth, sixth, seventh, and eighth claims against the ASCO defendants are dismissed with leave to amend.

### D. ASCO Defendants' Motion to Stay Discovery

Finally, the ASCO defendants request relief from Goodfellow's attempts to propound discovery. First, they request that discovery be stayed until their motion for judgment on the pleadings is resolved. This request is denied as moot. Should any discovery disputes arise, the parties should submit a joint discovery letter no longer than eight pages explaining the dispute. Any such disputes will be referred to a magistrate judge for resolution.

The ASCO defendants also seek a protective order, alleging Goodfellow has impermissibly sent emails directly to Ahern and Willis. While Goodfellow is no longer a member of the bar, it is nonetheless entirely improper for him to correspond directly with represented parties. *See Cal. R. Prof. Cond. 2-100.* Goodfellow is hereby ordered to cease communicating directly with Ahern, Willis, or any other represented parties.

### E. Goodfellow's Objection to ASCO Defendants' Certificate of Interested Entities

Goodfellow lodged an objection to the ASCO defendants' certificate of interested entities. (ECF Nos. 14, 25). He contends that the ASCO defendants have committed a fraud upon the court by failing to disclose that numerous yet-unnamed deputies have an interest in this litigation. This

1    objection is overruled.  If and when additional interested parties or entities are identified, the ASCO

2    defendants can file an amended certificate.

3                                                    V. CONCLUSION

4            For the aforementioned reasons, defendants' Rule 12 motions are denied in part and granted

5    in part with leave to amend.  In particular, this order holds as follows:

6                            -    Claims against the Alameda County Sheriff's Department and the
                                   Oakland Police Department are duplicative of claims against
7                                  Alameda County and the City of Oakland, respectively.  Claims
                                   against the former entities will be construed as claims against the
8                                  municipalities.

9
                             -    Claim One (§ 1983) is dismissed as to defendants Ahern and Willis.
10

11                           -    Claim Four (Unruh Civil Rights Act) is dismissed as to defendants
                                   Ahern, Willis, and the County.
12

13                           -    Claim Five (False Imprisonment) is dismissed as to defendants
                                   Ahern and the County.
14
                             -    Claim Six (Intentional Infliction of Emotional Distress) is dismissed
15                                 as to defendant Willis.

16                           -    Claim Seven (Negligent Infliction of Emotional Distress) is
                                   dismissed.
17
                             -    Claim Eight (Negligence) is dismissed.
18

19                           -    Claim Ten (Declaratory and Injunctive Relief) is dismissed.

20   Should Goodfellow elect to file an amended complaint, he must do so within thirty days.  Failure to

21   lodge a timely amended complaint may result in dismissal with prejudice of the aforementioned

22   defective claims.  To the extent Goodfellow asserts separate § 1983 "claims" against each

23   defendant, he is advised that, for the sake of clarity and to ensure adequate notice, any amended

24   complaint should spell out each separate theory of § 1983 liability against each defendant.

25   Goodfellow is encouraged to consult with the court's pro se help desk, available at 415-782-8982.

26           In addition, the ASCO defendants' request to stay discovery is denied.  Goodfellow,

27   however, is hereby ordered to cease communicating directly with represented parties.

28

IT IS SO ORDERED.

Dated:  3/26/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

No. CV 13-04726 RS
ORDER